Houston RANDOLPH and David S. Randolph, Individuals, d/b/a Randolph Farm Equipment, et al., Appellants–Respondents,

v.

MISSOURI HIGHWAYS AND TRANSPORTATION COMMISSION, Respondent–Appellant.

Nos. WD 66269, WD 66289.

Missouri Court of Appeals, Western District.

April 24, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 2007.

Ed Dougherty and Philip R. Holloway, Kansas City, MO, for appellants-respondents.

John W. Koenig, Jr., Regional Counsel, MHTC, Sikeston, MO, for respondent-appellant.

Before HOWARD, C.J., and ELLIS and EDWIN H. SMITH, JJ.

VICTOR C. HOWARD, Chief Judge.

Appellants ("Property Owners") own real and personal property in and around Carrollton, Missouri. They appeal the decision of the trial court in dismissing their personal property claims in an inverse condemnation action as being untimely and the denial of an award of attorney fees and costs in their inverse condemnation case for property damages. On cross-appeal, the Missouri Highways and Transportation Commission ("MHTC") appeals the trial court's grant of prejudgment interest. For the reasons set forth below, the judgment of the trial court is affirmed.

## Factual Background

In 1977, MHTC constructed a highway bypass for Highway 65 around Carrollton, Missouri.[1] In 1993, Missouri experienced one of the worst floods in its history. During this flood, the Property Owners suffered damage to real and personal property and on May 24, 1999, the Property Owners brought an inverse condemnation action against MHTC. The Property Owners alleged that the construction around Highway 65 had materially changed and altered the flow of the surface water in and around the highway and Wakenda

---

1. This same construction project was what led to the flooding described in *Heins Implement Co. v. Missouri Highway & Transportation Commission,* 859 S.W.2d 681 (Mo. banc 1993). Additional details of the project can be found in *Heins.*

Creek resulting in the flooding of their property in 1993 and again in 1998.

On March 19, 2004, MHTC filed a motion to dismiss, arguing that a five-year statute of limitations barred the Property Owners' personal property claims. At a pre-trial conference, the trial court ruled that the Property Owners would be precluded from making any claims for damages that related to personal property.

On May 26, 2005, a jury returned verdicts in favor of Property Owners for real estate damages. The Property Owners filed a Memorandum in Support of Plaintiffs' Proposed Judgment that included a request for attorneys' fees under 49 C.F.R. 24.107 and prejudgment interest. The trial court entered its judgment on August 24, 2005, awarding the Property Owners prejudgment interest but denying the request for attorney fees and costs. Both the Property Owners and MHTC filed motions to amend and/or modify the judgment and motions for a new trial, which were all denied. This appeal follows.

## Standard of Review

■ Property Owners argue on appeal that the trial court erred in granting the motion to dismiss in regard to the personal property claims based on the five-year statute of limitations and that the court erred in denying attorney fees and costs. MHTC cross-appeals, arguing that the trial court erred in awarding prejudgment interest. All of these issues regard the application of statutes and are questions of law. We review questions of law *de novo*, and no deference is given to the trial court's judgment. *McKinney v. State Farm Mut. Ins.*, 123 S.W.3d 242, 245 (Mo. App. W.D.2003) (citations omitted).

## Discussion

### Statute of Limitations on Personal Property Damage

■ In their first point on appeal, Property Owners argue that the trial court erred when it granted MHTC's motion to dismiss regarding the personal property claims based on a five-year statute of limitations. They argue that *Shade v. Missouri Highway & Transportation Commission*, 69 S.W.3d 503 (Mo.App. W.D. 2001)[2] was wrongly decided in that: (1) a ten-year statute of limitations should apply and (2) subsequent flooding, such that occurred in 1998 in this case, should constitute a new cause of action. We disagree.

Similar to the case at bar, *Shade* involved flooding that was caused by a MHTC highway construction project. *Id.* at 506. The plaintiffs alleged that the construction project materially changed and altered the flow of surface water surrounding their properties. *Id.* at 507. They filed a lawsuit against MHTC under the theory of inverse condemnation for damages to their personal and real property. *Id.* MHTC filed a motion for summary judgment based on the affirmative defense of the statute of limitations. *Id.* The trial court granted the motion and the plaintiffs appealed. *Id.*

On appeal, this court recognized the fact that *Heins Implement Company v. Missouri Highway & Transportation Commission*, 859 S.W.2d 681, had "remove[d] inverse condemnation actions from the realm of tort liability and set them in a constitutional context." *Shade*, 69 S.W.3d at 510. After an extensive review of the conflicting precedent on inverse condemnation actions, we held that the statute of

---

**2.** The motion for rehearing and/or transfer to the supreme court was denied on March 5, 2002.

limitations in inverse condemnation cases for *real* property was ten years. *Id.* at 513. This decision was based on the time period required for an entity with the power of eminent domain to obtain a prescriptive easement. *Id.* at 512–13.

In regard to personal property, we acknowledged that the eminent domain statute, section 227.120, RSMo 1994, only spoke of "lands," but that the prohibition of taking or damaging personal property stemmed from the constitution and not statutory law. *Id.* at 516. However, unlike the taking of real property, the time period regarding a prescriptive easement could not be applied to personal property. *Id.* at 517. We also noted that unlike real property, a specific statute of limitations, section 516.120(4), RSMo 1994, applied to injury to personal property. *Id.* Section 516.120(4) requires that "[a]n action for taking, detaining or injuring any goods or chattels, including actions for the recovery of specific personal property, or for any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated" was to be brought within five years.

Nothing has changed since our holding in *Shade.* Section 516.120(4)[3] still imposes a five-year statute of limitations to actions for injuring personal property. There is still no statute that prescribes a specific time limit to inverse condemnation claims. *See Shade,* 69 S.W.3d at 512. Therefore, the Property Owners' personal property claims in this case were required to be brought within five years. The date of taking in this case was determined to be July 18, 1993. Therefore, in order for the suit for personal property damages to be timely, it had to be filed by July 18, 1998. However, the Property Owners did not file their petition for damages until May 24, 1999. Thus, the claim was not timely, and

the trial court did not err in granting MHTC's motion to dismiss for failure to state a claim.

■ Anticipating that we would not overturn *Shade,* the Property Owners also argue that even if the five-year statute of limitations were to apply, the subsequent flooding in 1998 would constitute a new cause of action. Yet, once again, whether or not subsequent flooding constitutes a new cause of action was answered in *Shade.*

■ In *Shade* we held that a "cause of action for inverse condemnation accrues once the fact of damage is capable of ascertainment." 69 S.W.3d at 514 (citations omitted). An injury will accrue at the " 'completion of installation' " or " 'when the effect of the injury becomes manifest.' " *Id.* (quoting *Rebel v. Big Tarkio Drainage Dist. of Holt City,* 602 S.W.2d 787, 792 (Mo.App. W.D.1980)). The determination depends on the facts of each case, but in situations involving successive floods:

> the damage may not be ascertainable on the date of the first flood. It may well be that it would only become "apparent by the passage of time that the intermittent flooding was of a permanent nature." Accrual date of a cause of action does not arise until the damages and *the cause* of the damages are reasonably ascertainable. Damages are capable of ascertainment to initiate the running of the limitation period when a plaintiff *with a recognized theory of recovery* sustains damage.

*Id.* (internal citations omitted). In *Shade,* the case was remanded because no determination had been made at the summary judgment stage of when the different causes of actions were capable of ascer-

---

**3.** All statutory references are to RSMo 2000   unless otherwise noted.

tainment. *Id.* at 515. That is not the situation in the case at bar. Here, the date of ascertainment was in 1993.[4] The highway construction that caused the flooding at issue in this case was a permanent one that had been completed in 1977. The Property Owners admit that none of them experienced a personal property loss for the first time in 1998. Therefore, the five-year statute of limitations was triggered in 1993. The trial court's grant of the motion to dismiss is affirmed.

### Attorney Fees and Costs

■ In their second point on appeal, Property Owners argue that the trial court erred in denying their motion for assessment of litigation expenses. They argue that pursuant to the Uniform Policy on Real Property Acquisition Practices, 42 U.S.C. 4651, et seq., and 49 C.F.R. 24.107 ("the Act"), attorney fees and costs can be awarded in inverse condemnation cases.[5] In response, MHTC argues that no error was committed because Missouri law does not authorize the award of attorney fees in inverse condemnation cases. We agree with MHTC.

■ Missouri courts are not allowed to award attorney fees unless provided for by statute, contract or "when needed to balance benefits in a court of equity." *Moore v. Weeks,* 85 S.W.3d 709, 723 (Mo. App. W.D.2002) (quoting *Killion v. Bank Midwest, N.A.,* 987 S.W.2d 801, 809 (Mo. App. W.D.1998)). Missouri follows the

"American Rule" which requires each party to bear the expense of their own attorney fees. *Id.* (citing *Fisher v. Fisher,* 874 S.W.2d 543, 546 (Mo.App. W.D.1994)).

The Property Owners argue that the Act provides the required statutory authorization of attorney fees. They allege that through case law, Missouri courts have fully adopted the Act. *See City of Columbia v. Baurichter,* 713 S.W.2d 263, 265–66 (Mo. banc 1986). However, a closer look at the applicable case law does not support this assertion.

In *State ex rel. Missouri Highway & Transportation Commission v. Anderson,* the Missouri Supreme Court found that a party was not entitled to subpoenas regarding matters allegedly covered by the Act. 735 S.W.2d 350, 357–58 (Mo. banc 1987). This case clearly stands for the proposition that the Act is not applied in all cases.

Furthermore, in *Baurichter,* the Missouri Supreme Court pointed out that the Act would only be applied where Missouri law does not expressly prohibit its application. 713 S.W.2d at 266. "The law is well established that costs cannot be assessed against state agencies or state officials absent express statutory authority." *M.P. v. Mo. Dep't of Soc. Servs., Div. of Family Servs.,* 147 S.W.3d 765, 766 (Mo. banc 2004) (citing *Richardson v. State Highway & Transp. Comm'n,* 863 S.W.2d 876, 882 (Mo. banc 1993)). In the face of such a

---

**4.** Property Owners also argue that the subsequent flooding caused "continuing injury." Their argument is similar to the continuing tort exception to the statute of limitations. However, for this exception to apply, the *wrong* must be continuing or repeating. *D'Arcy & Assocs., Inc. v. K.P.M.G. Peat Marwick, L.L.P.,* 129 S.W.3d 25, 30 (Mo.App. W.D.2004). Damages resulting from one completed, wrongful act, such as the MHTC construction in this case, are not adequate. *Id.* When there is only one wrong, which

results in continuing damage, the cause of action accrues when that wrong is committed and the damage sustained is capable of ascertainment. *Id.* In this case, not only does the holding in *Shade* support the trial court's dismissal, but also the Property Owners' argument regarding a continuing type of injury must fail.

**5.** There is no dispute that the highway bypass construction received federal funding.

strong prohibition against awarding attorney fees against a state agency, such as the MHTC, the roundabout way that the Property Owners attempted to overcome this prohibition cannot succeed.

Missouri law expressly prohibits the application of attorney fees absent statutory authority. Although the Property Owners try to use the Act as such statutory authorization, we find the Act's application tenuous at best. In accordance with the long-standing and strict application of the American Rule in Missouri and the prohibition of awarding costs against state agencies, the trial court correctly denied the Property Owners' application for attorney fees. The trial court's denial is affirmed.

### Prejudgment Interest

■ On cross-appeal, MHTC argues that the trial court erred in awarding prejudgment interest. On April 24, 2007, this court handed down an opinion that deals with this issue. In *Collier v. City of Oak Grove*, WD 65355, 2007 WL 1185982, —— S.W.3d —— (Mo.App.W.D. Apr. 24, 2007), we recognized that in order for one to receive just compensation in an inverse condemnation action, interest should be awarded for the time between the taking and the time payment is actually made. Slip op. at 23, —— S.W.3d at ——. *See also Akers v. City of Oak Grove*, WD 65220, 2007 WL 1118391, —— S.W.3d —— (Mo.App.W.D. Apr. 17, 2007). Because "a claim for interest in an inverse condemnation action is predicated on the just compensation clauses of the United States and Missouri Constitutions[,][s]uch a claim does not require a statutory basis." *Id.* at 27, at ——.

However, in *State ex rel. State Highway Commission v. Green,* the Missouri Supreme Court held that "[a] trial court is powerless to amend a verdict beyond that required for clerical errors made manifest by the record and may never amend 'matters of *substance* required to be passed on by the jury, which, in their nature, are essential to the determination of the case.'" *Id.* at 694 (quoting *State ex rel. State Highway Comm'n v. Green,* 305 S.W.2d 688, 694 (Mo.1957)) (emphasis added). Therefore, we held in *Collier,* that although interest can be awarded in an inverse condemnation action, it must be done by a jury, not after the verdict by the judge. *Id.* "[T]he award of interest and its calculation in an inverse condemnation case is properly the province of the jury as an element of damages." *Id.* at 691.

In *State ex rel. State Highway Commission v. Ellis,* it was noted that following *Green* the legislature passed section 523.045 regarding interest for direct condemnation cases. 382 S.W.2d 225, 230 (Mo.App.1964). The court in *Ellis* stated that section 523.045 did not give litigants a substantive right. *Id.* Instead, what it did was provide a "vehicle by which the substantive right was to be enforced and made effective (by addition to the amount of the verdict) [and] was only procedural in providing a method and mechanics for its attainment." *Id.See also State ex rel. State Highway Commission v. Kendrick,* 383 S.W.2d 740, 747 (Mo.1964) (section 523.045 provides no "new substantive rights but is merely procedural."). No such procedural statute has been enacted for inverse condemnation cases.[6] However, in this case, the parties agreed that if an award of prejudgment interest were to be awarded, it was to be done by the judge following the jury's verdict.[7]

■ "Stipulations varying or altering trial procedure, or waiving the benefit of

---

6. Once again, we appeal to the legislature to address this issue.

7. In letter briefs to this court, MHTC has denied that any agreement existed. However, during oral arguments before this court,

procedural statutes, have been consistently enforced by our courts in the absence of any claim of fraud, duress or mistake...." *Pierson v. Allen,* 409 S.W.2d 127, 130 (Mo. 1966).[8] Given that a party may waive "the benefit of a statute or constitutional provision enacted for the protection of the party where the stipulation involves a matter of private right," *Lewis v. Vargas,* 787 S.W.2d 319, 320 (Mo.App. W.D.1990), we see no reason why the parties could not agree to have a judge do the mathematical equation to add interest to the verdict once he determined, as a matter of law, that prejudgment interest was appropriate. The award of prejudgment interest is affirmed.

### Conclusion

In conclusion, we affirm the trial court's dismissal of the Property Owners' personal property claims based on our holding in *Shade* that the five-year statute of limitations applies and that even with successive floods, the cause of action accrued when the cause of the damage was capable of ascertainment. We affirm the trial court's denial of attorney fees because there is no applicable exception to the American Rule of attorney fees. Finally, we affirm the

trial court's award of prejudgment interest based on the agreement between the parties that it would be an issue for the judge.

The judgment of the trial court is affirmed.

ELLIS and EDWIN H. SMITH, JJ., concur.

---

counsel for MHTC responded "[w]ithout question" that if interest was to be awarded, it was by agreement of the parties, it was going to be done by the judge and that it was "a judge issue." We accept this statement during oral argument as a concession that there was an agreement. *See Phipps v. Sch. Dist. of Kansas City,* 588 S.W.2d 128, 131 (Mo.App. W.D.1979).

8. "A stipulation is an agreement between counsel with respect to business before the court." *Lewis v. Vargas,* 787 S.W.2d 319, 320 (Mo.App. W.D.1990) (citing *Pierson,* 409 S.W.2d at 130). Just because an oral agreement is not formally called a "stipulation," does not mean that it will not be treated as such. *See generally Renick v. City of Maryland Heights,* 767 S.W.2d 339, 341 n. 1 (Mo.

App. E.D.1989) (agreement between parties regarding size of land treated as stipulation); *Fair Mercantile Co. v. Union–May–Stern Co.,* 359 Mo. 385, 221 S.W.2d 751, 755 (1949) (oral agreement or stipulation has same binding force and effect as a written one). Stipulations are to be " 'interpreted in view of the result which the parties were attempting to accomplish.' " *Pierson,* 409 S.W.2d at 130 (citation omitted). Based on the statements made during oral arguments before this court and that during voir dire MHTC told the jury that the judge had a procedure for taking care of interest and that interest would be taken care of by the Court, it is clear that the parties intended for the judge to handle any issue regarding interest.